UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ISRAEL BRANDON,

    Plaintiff,

v.                                              Case No. 2:08-cv-152
                                              HON. ROBERT HOLMES BELL

DAVID BERGH, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Israel Brandon, an inmate currently confined at the Alger Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include former Warden David Bergh, Food Service Supervisor Wayne DeShambo, former Assistant Resident Unit Manager (RUM) Catherine Bauman, Assistant Deputy Warden Ronald Bobo, RUM Denver McBurney, Resident Unit Supervisor Peggy Carberry, Assistant RUM Thomas Salo, Lt. John Adams, Sgt. Beatrice Hursh, Sgt. Don Belusar, Sgt. Tim Lee, Psychologist Paul Eyke, Nurse Sandra Monroe, Nurse Mary Hite, Resident Unit Officer (RUO) Mike Richardson, RUO Steve Adams, RUO Norman Fleury, RUO Robert Masters, RUO Gerald Monticello, RUO Bruce Kennedy, Corrections Officer (CO) Daryle Heidtman, CO Lee Wickwire and CO Elmer Sabin, all of whom are currently employed or were employed during the time at issue at AMF.

Plaintiff's complaint[1] alleges that from June 7, 2005, through July 4, 2005, Defendants Richardson, S. Adams, Wickwire, Fleury, Sabin and Kennedy brought him two meals

---

[1] Plaintiff filed two subsequent amended complaints (docket #23 and #36) following his initial complaint (docket #1). Facts and arguments referenced here, unless otherwise noted, are taken from Plaintiff's second amended complaint (docket #36); however, it is noted that the substance of all three complaints is the same.

a day that had been contaminated with various substances. Specifically, Plaintiff alleges that the meals contained hair, mucus, and other foreign substances, and that portions of the meals were altered. Plaintiff states that one of these meals, which did not appear to be contaminated, made him violently ill, and that Defendant Adams ignored his request for medical attention. Plaintiff alleges that he was forced to abstain from eating several meals due to the continued tampering. As a result of receiving these meals, Plaintiff alleges that he suffered from abdominal pain, kidney problems, significant weight loss, and emotional distress. Plaintiff claims that Defendants, by serving him contaminated food, violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff next claims that Defendant Heidtman delivered him a contaminated meal on October 24, 2006. Additionally, he states that Defendant Masters delivered contaminated meals to him twice a day for four days, beginning on January 14, 2007. Plaintiff alleges that Defendant Masters did this in retaliation for Plaintiff's actions of filing grievances and assisting others with filing grievances against Defendant Bergh concerning the food contamination issue. Plaintiff alleges that Defendant Masters therefore violated his First Amendment rights. Plaintiff states that Defendant Monticello served him a contaminated meal on January 20, 2007. When Plaintiff asked Defendant Monticello why he had served him a meal that was contaminated, Plaintiff states that Defendant Monticello responded, "Because I don't give a shit." Plaintiff claims that Defendants Heidtman, Masters and Monticello, by serving him contaminated food, violated his Eighth Amendment rights.

Plaintiff claims that Defendants Bergh, DeShambo, Bobo, Bauman, McBurney, Salo, Carberry, Adams, Hursh, Belusar and Lee were made aware of a pattern of abuse involving the contamination and alteration of food. Plaintiff claims that these Defendants ignored this abuse. Specifically, Plaintiff claims that Defendants failed to handle grievances properly and failed to

develop policies to ensure compliance with current MDOC policies of ensuring prisoner safety and humane treatment. Plaintiff claims that Defendants, by failing to take these actions, violated his Eighth Amendment rights.

Plaintiff claims that Defendant Eyke was aware of a long-standing problem of food contamination and alteration, and that he was specifically informed by Plaintiff on July 4, 2005, and on July 12, 2005, of the contamination of Plaintiff's food and of Plaintiff's resulting deteriorating health. Plaintiff alleges that Defendant Eyke failed to follow up with Plaintiff or to take action to intervene in Plaintiff's situation. As a result, Plaintiff alleges that Defendant Eyke violated his Eighth Amendment rights.

Lastly, Plaintiff claims that Defendant Hite observed Plaintiff's deteriorated condition on July 11, 2005 and was informed of the food contamination and she refused to provide treatment. Plaintiff claims that Defendant Monroe witnessed Plaintiff's deteriorating condition during a health screening on August 11, 2005, and that she provided inadequate treatment to Plaintiff at that time. Specifically, Plaintiff contends that Defendant Monroe refused to provide adequate exams to determine the effects of Plaintiff's alleged weight loss, and that she changed Plaintiff's recorded previous weight from 230 pounds to 200 pounds. Plaintiff alleges this was done to cover up his weight loss which was caused by food contamination. As a result, Plaintiff alleges that Defendants Hite and Monroe violated his Eighth Amendment rights by failing to provide adequate medical care.

Plaintiff is suing all Defendants in their individual capacities and is also suing Defendants Bergh, Bauman and DeShambo in their official capacities. Plaintiff is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court are Defendants' Motions for Summary Judgment (docket #46 and #103), pursuant to Fed. R. Civ. P. 56. Plaintiff has filed responses to these motions (docket

#117 and #120) and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendants Richardson, Adams, Wickwire, Fleury, Sabin and Kennedy, by serving him contaminated meals, violated his Eighth Amendment rights. The Eighth

Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In their brief to support summary judgment, Defendants Richardson, Adams, Fleury and Kennedy argue that they are entitled to summary judgment because Plaintiff, by failing to mention specific meals that were tampered with by specific guards, makes conclusory allegations. Defendants Wickwire and Sabin argue that, because Plaintiff only attributes the tampering of three specific meals to them,[2] Plaintiff has failed to show an excessive deprivation. Defendants Richardson, Adams, Fleury, Kennedy, Wickwire and Sabin all argue that they are also entitled to summary judgment because Plaintiff's allegations are unsupported. Defendants Heidtman, Monticello and Masters, against whom Plaintiff raises similar allegations, claim that they are entitled

---

[2] Defendants Wickwire and Sabin reference Plaintiff's initial complaint, while Defendants Richardson, Adams, Fleury and Kennedy reference Plaintiff's first amended complaint.

to summary judgment because Plaintiff can offer nothing more than his unsupported allegations that these contaminated meals were served to him.

Plaintiff argues that Defendants Richardson, S. Adams, Fleury, Kennedy, Wickwire and Sabin, as guards who worked together on the same shift, all served him contaminated meals over a month-long period. He states that he then began refusing meals, due to the fact that they continued to be contaminated. In his affidavit, Plaintiff attests that on or around June 20, 2005, Defendant Kennedy served him a meal of nachos with mucus on top of it. Additionally, Plaintiff claims that on or about June 7, 2005, Defendant Fleury served him a meal with hair hidden in it, and that on or around June 21, 2005, Defendant Adams served him a beverage with dried mucus in it. (*See* docket #118, Plaintiff's Affidavit, p. 2, 3, 4.) Therefore, Defendants Richardson, Adams, Fleury, Kennedy, Wickwire and Sabin are incorrect in their claim that Plaintiff cannot provide any specific information on meals or guards involved. Additionally, Plaintiff's complaint alleges that his meals were contaminated for two meals a day for a month-long period, and he appears to assert that Defendants Richardson, Adams, Fleury, Kennedy, Wickwire and Sabin were all aware of this contamination and were all involved in providing these meals. With regard to the other guards, Plaintiff claims that Defendants Heidtman and Monticello each served him a contaminated meal on October 26, 2006 and January 20, 2007. Plaintiff additionally claims that Defendant Masters served him two contaminated meals a day for four days, beginning on January 11, 2007. The undersigned notes that Plaintiff provides support for his allegations in the form of affidavits from other prisoners, who claim that Plaintiff's meals were being contaminated by the guards (*see* docket #118, Affidavit of C. Moore) and that Plaintiff was getting sick from eating the contaminated meals (*see* docket #118, Affidavit of CJ Harden-Bey, p. 2, and Affidavit of Derrick Harris). In the opinion of the undersigned, a genuine issue of material fact exists as to whether Defendants engaged in the

contamination of Plaintiff's meals and as to whether Plaintiff suffered an excessive deprivation. Therefore, Defendants Richardson, Adams, Fleury, Kennedy, Wickwire, Sabin, Heidtman, Monticello and Masters are not entitled to summary judgment on Plaintiff's Eighth Amendment claims against them.

Plaintiff claims that Defendant Masters, by serving Plaintiff a series of contaminated meals for four days, beginning on January 14, 2007, acted in retaliation because plaintiff had filed a grievance against Defendant Bergh three days earlier, on January 11, 2007. The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *Shehee*, 1999 WL 1029294, at *4. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21,

1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff argues that Defendant Masters' statement, "Back off the food if you want to eat, asshole," which was allegedly made after Defendant Masters served the contaminated meal to Plaintiff, supports Plaintiff's conclusion that the action was taken in retaliation for his recently filed grievance. (*See* docket #126, p. 4.) However, in the opinion of the undersigned, this statement is ambiguous and open to interpretation. Therefore, the undersigned concludes that Plaintiff has not presented any facts to support his conclusion that Defendant Masters served him a contaminated meal because Plaintiff had filed a grievance against Defendant Bergh. Accordingly, his speculative allegation fails to state a claim.

Plaintiff argues that Defendants Bergh, DeShambo, Bobo, Bauman, McBurney, Salo, Carberry, Adams, Hursh, Belusar and Lee violated his Eighth Amendment rights by failing to take action to correct the food contamination practices that they had been made aware of. However, as Defendants note in their brief in support of summary judgment, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Bergh, DeShambo, Bobo, Bauman, McBurney, Carberry, Adams, Hursh, Belusar and Lee were personally involved in the activity which forms the basis of his claim. Plaintiff states that Defendants failed to issue or promulgate policies to ensure that inmates' food was not contaminated. In support of this, he

attaches affidavits from other prisoners, stating that supervisors were aware of inmate food contamination practices. (*See* docket #118.) However, Plaintiff does not provide any facts showing that Defendants Bergh, DeShambo, Bobo, Bauman, McBurney, Carberry, Adams, Hursh, Belusar and Lee had any involvement in the contamination of Plaintiff's food. Accordingly, the Court concludes that Plaintiff's claims against Defendants Bergh, DeShambo, Bobo, Bauman, McBurney, Carberry, Adams, Hursh, Belusar and Lee are properly dismissed for lack of personal involvement.

Plaintiff does allege that Defendant Salo was aware of the food contamination and failed to take any corrective action. To support this allegation, Plaintiff states that he sent Defendant Salo several kites about the issue, and spoke to him multiple times. Plaintiff states that during one conversation with Defendant Salo, he asked if there was a solution to the continued food contamination problem, and Defendant Salo responded, "I don't know if there is a solution." (*See* docket #126, p. 2.) As noted above, Defendant Salo was employed as a Resident Unit Manager and was in a position to monitor and discipline his staff. Defendant Salo was allegedly aware of the offending employees' conduct at a time when the conduct could have been prevented. Defendant Salo fails to provide any factual support for his argument that he was not personally involved. The undersigned concludes that Plaintiff's claim against Defendant Salo is not entitled to summary judgment for lack of personal involvement.

Plaintiff argues that Defendant Eyke, by failing to follow up or inform anyone after learning of the food contamination and subsequent health risk, violated Plaintiff's Eighth Amendment rights. Defendant Eyke argues that he is entitled to summary judgment because Plaintiff, by basing his argument on Defendant Eyke's alleged failure to act, has failed to state a claim. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against

prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir.1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

In the opinion of the undersigned, Plaintiff has failed to state a claim with regard to Defendant Eyke. As Defendant Eyke argues and as Plaintiff admits, Defendant Eyke recommended that Plaintiff go through the grievance process to resolve his food contamination complaint. (*See* docket #118, Plaintiff's Affidavit, p. 7.) Plaintiff contends that Defendant Eyke failed to follow his work responsibilities by failing to take action concerning Plaintiff's complaint. However, Plaintiff fails to show what additional action should have been taken that was within the scope of Defendant Eyke's duties. Because Defendant Eyke did advise Plaintiff on how to resolve his issue, the undersigned concludes that Defendant Eyke did not act with deliberate indifference. Therefore, Defendant Eyke is entitled to summary judgment.

Plaintiff claims that Defendants Hite and Monroe provided him with inadequate medical treatment, thereby violating his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth

Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a

> physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

Defendants Hite and Monroe argue that they are entitled to summary judgment based on Plaintiff's failure to state a claim. Specifically, Defendant Hite claims that, when she went to examine Plaintiff on June 30, 2005, and again on July 11, 2005, he refused to cooperate in her attempts to examine him. To support this claim, Defendant Hite attaches Plaintiff's medical records, which include a June 30, 2005 entry with a quote from Plaintiff stating, "Is this for the eye exam? Oh[,] this is for that health screen[,] I don't need that" and listing Plaintiff as non-compliant. (*See* docket #104, Defendant's Exhibit B.) The records also include a July 11, 2005 entry by Defendant Hite stating that Plaintiff refused to be seen for a sick call. (*See id*.) Defendant Monroe claims that she did not change Plaintiff's previous weight in his medical chart during his August 8, 2005 visit, as Plaintiff alleges. To support this claim, Defendant Monroe attaches Plaintiff's medical records, which include an August 8, 2005 entry listing Plaintiff's current weight as 209 pounds and his last weight as 200 pounds. (*See* docket #104, Defendant's Exhibit B.) Both Defendants contend that the fact that they did not order medical tests to determine the effects of Plaintiff's alleged food contamination does not show an Eighth Amendment violation. In the opinion of the undersigned, Plaintiff has failed to show that Defendants Hite and Monroe violated his Eighth Amendment right to adequate medical care. As Defendants note, differences in opinion between the nurses and Plaintiff as to what medical tests were necessary does not constitute an Eighth Amendment violation. Additionally, Plaintiff's claim against Defendant Hite is weakened by her statement that, while he complained of food tampering, he then refused to be examined by her. Furthermore, Plaintiff's unsupported allegation that Defendant Monroe changed the weight in his chart is not sufficient to show inadequate medical treatment. Therefore, Defendants Hite and Monroe are entitled to summary judgment.

Finally, all Defendants assert that they are entitled to qualified immunity with respect to each of Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).[3]

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the

---

[3] Recently the Supreme Court indicated in *Pearson v. Callahan*, 129 S.Ct. 808 (2009), that the Court need not follow this tripartite analysis.

unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). For the above stated reasons, the undersigned concludes that Defendants Bergh, DeShambo, Bauman, Bobo, McBurney, Carberry, Adams, Hursh, Belusar, Lee, Eyke, Monroe and Hite have shown that there is no genuine issue of material fact that their conduct did not violate Plaintiff's constitutional rights. Additionally, the undersigned

concludes that Defendant Masters has shown that there is no genuine issue of material fact that his conduct did not violate Plaintiff's First Amendment rights. Therefore, the undersigned recommends that Defendants Bergh, DeShambo, Bauman, Bobo, McBurney, Carberry, J. Adams, Hursh, Belusar, Lee, Eyke, Monroe and Hite are entitled to qualified immunity with regard to Plaintiff's Eighth Amendment claims against them, and that Defendant Masters is entitled to qualified immunity with regard to Plaintiff's First Amendment claim against him.

With regard to Plaintiff's Eighth Amendment claims against Defendants Salo, Richardson, S. Adams, Fleury, Kennedy, Wickwire, Sabin, Masters, Monticello and Heidtman, Plaintiff has succeeded in showing that there is a genuine issue of material fact regarding whether these Defendants violated his Constitutional rights. Because the asserted misconduct, if true, violates clearly established law, Defendants Salo, Richardson, S. Adams, Fleury, Kennedy, Wickwire, Sabin, Masters, Monticello and Heidtman are not entitled to qualified immunity.

Accordingly, it is recommended that Defendants' motions for summary judgment (docket #46 and #103) be granted in part and denied in part. Specifically, it is recommended that summary judgment be granted as to Defendants Bergh, Bauman, DeShambo, Bobo, McBurney, Carberry, John Adams, Hursh, Belusar, Lee, Eyke, Monroe and Hite, and denied as to Defendants Richardson, Steve Adams, Fleury, Wickwire, Sabin, Kennedy, Masters, Monticello, Heidtman and Salo.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: July ___, 2009

                                                                          _____
                                                                          TIMOTHY P. GREELEY
                                                                          UNITED STATES MAGISTRATE JUDGE